Filed 1/6/23 P. v. Morales CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077827 |
| v. | (Super.Ct.No. RIF1701355) |
| ROGELIO VERGARA MORALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Samuel Diaz, Jr., Judge. Affirmed as modified.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Melissa Mandel and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In 2016, defendant and appellant Rogelio Vergara Morales and his wife, Mireya Arias, filed numerous gender discrimination lawsuits against minority-owned hair salons and dry cleaners. Each would enter a hair salon or dry cleaner, and if Arias was charged more, defendant, an attorney, would file a gender discrimination lawsuit against the businesses pursuant to Civil Code section 51.6, the Gender Tax Repeal Act of 1995. Defendant harassed an attorney, Rosa Sahagun, who helped some of the victims defend against the lawsuits and who organized a demonstration against these gender discrimination lawsuits at defendant's law office; he also disobeyed a restraining order she had obtained. Defendant was convicted of 62 counts, including crimes of stalking and 12 counts of disobeying a court order against Sahagun.

Defendant filed a first appeal. In an unpublished opinion filed on June 18, 2021, in *People v. Rogelio Morales, et al*, case No. E072462 (Opinion), this court reversed numerous counts against defendant, but upheld several counts involving Sahagun and one of the salon owners, Janet M.[1] This court vacated defendant's sentence and remanded for retrial on several counts and resentencing. Upon remand, the People elected not to retry any of the counts, and defendant was resentenced on the remaining counts.

On appeal, defendant contends that (1) the trial court abused its discretion by concluding that Penal Code section 654 did not apply to his convictions of stalking and disobeying a court order; (2) the trial court erred by imposing consecutive sentences on

---

[1] On June 1, 2022, at defendant's request, we took judicial notice of the record in defendant's prior appeal, case No. E072462.

defendant's stalking and disobeying a court order misdemeanor convictions; (3) the assessments imposed pursuant to Penal Code section 1465.8 and Government Code section 70373 were unauthorized and must be corrected on appeal; and (4) the trial court erred by imposing the same restitution fine as it originally imposed.

## FACTUAL AND PROCEDURAL HISTORY[2]

### A. FACTS FOR COUNTS 43, 51 AND 52 THROUGH 63

During a few months in 2016, defendant and Arias entered several beauty shops and dry cleaners in Riverside County and Los Angeles County, each receiving haircuts or dropping off clothes for dry cleaning. If Arias paid more for her service, defendant would file a gender discrimination lawsuit on Arias's behalf.

#### 1. *JANET M.*

One such location was Visage Hair Salon owned by Janet M., located in Los Angeles. On January 17, 2017, Janet was served with a gender discrimination lawsuit that defendant filed against Visage Hair Salon on behalf of Arias. It alleged that on October 5, 2016, Arias entered her business and was charged $40. Janet could not find Arias in the appointment book and video from the salon for that day did not show that Arias came into the salon. The lawsuit sought $25,000 in damages. The damages were a threat to her business.

---

[2] The facts are derived from the Opinion.

3

Janet spoke with defendant about the lawsuit. Janet told him that Arias had never been in the salon. He laughed and told her, "You can deny as much as you want. I have the photos." Defendant told her that they could settle the case "[d]own the road." Janet explained that she based her pricing for haircuts based on the service and the time involved.

Riverside Police Detective Dave Smith investigated the allegation against Visage Hair Salon. He discovered that defendant had been in court in Los Angeles on October 5, 2016, near the salon. Arias's cellular telephone showed that she was in Riverside on October 5. Defendant was charged in connection with this event, in count 42 with extortion (count 42), filing a false instrument, which was the complaint (count 43) and theft (count 44).

### 2. *ROSA SAHAGUN*

Count 51 (stalking) and counts 52 through 63 (violation of a restraining order) involved Rosa Sahagun, who was an attorney specializing in family law, immigration and criminal defense. She was Hispanic and involved herself in community activism especially helping the Hispanic community. Sahagun became aware that defendant and Arias were suing small businesses. She held a meeting with several impacted business owners and other members of the community. Sahagun and the community members organized a protest at defendant's office on July 17, 2016. There were 30 to 40 community members present. Defendant came out of his office and started yelling into a bullhorn. She heard defendant make derogatory comments to the crowd.

4

After the protest, there were approximately 60 posts made on the Facebook page for her law office from an account belonging to defendant. He called her a "bitch lawyer" and complained about the protest at his office. Defendant also posted a photograph of Sahagun on his own Facebook page calling her corrupt and a fraud. He also posted that Sahagun was obsessed with him and in love with him. Defendant sent Sahagun a private message on her personal Facebook page that she seemed obsessed with him. Sahagun became concerned. She installed security cameras in her office. She stopped being at the office alone. She no longer felt safe.

Sahagun started receiving threatening messages on her Facebook page posted by Cali Rave Cartel. The posts included claims that she was a fraud and a whore. One of the posts called her a "cunt" and a "fucker." Another post from the Cali Rave Cartel called her a "fucking whore attorney" and that they were coming to her office to get justice. Defendant and Arias were found to be connected to the Cali Rave Cartel clothing website. Sahagun confirmed the posts came from defendant and based on the information she obtained, she filed a restraining order against defendant on July 27, 2016. This gave her emergency protection from defendant. The restraining order was granted on August 30, 2016. Defendant was ordered not to contact Sahagun in any way—either himself or through third parties.. He was not to harass her. They were both awarded attorney fees because the stay -way order was denied.

After the restraining order was granted, Sahagun started receiving messages on her Facebook page from someone named Mustaflo Elizabaragan. The person posted 40 to 50 times asking Sahagun to pay defendant's attorney fees. There were 30 posts on

5

November 3, 2016. Others were sent on November 5, 2016. One of the posts stated that she would lose her bar license if she disobeyed the order to pay defendant. Sahagun contacted the police because she believed these posts were from defendant in violation of the restraining order.

Riverside Police Detective David Smith investigated the claim by Sahagun that defendant had violated the restraining order. Detective Smith obtained search warrants for the Facebook pages of Elizabaragan Mustafolo and Cali Rave Cartel. Detective Smith discovered that the IP addresses, which showed where the messages were sent from a device, were the same for Mustafolo and Cali Rave Cartel. This IP address also was matched to defendant's law firm. Further, the phone number associated with Cali Rave Cartel belonged to defendant.

B.    <u>CONVICTIONS</u>

Morales was convicted of 62 counts in relation to the acts committed against several business owners and Sahagun. In the prior appeal, this court affirmed counts 43 (Pen. Code, § 115; offering a false instrument) 51 (Pen. Code, § 646.9; stalking) and 52 through 63 (§ 166, subd.(a)(4); violating a restraining order). The remaining counts were stricken. Defendant was originally sentenced to 22 years to be served in state prison on all counts. He was ordered to pay restitution in the amount of $192,615.58 to all of the victims. On appeal, we vacated defendant's sentence, and ordered the matter remanded for retrial on several counts (counts 40, 42 and 44) at the discretion of the People, and resentencing on the remaining counts, including awarding restitution.

6

## C. RESENTENCING

Upon remand, the People filed a resentencing brief. The People contended that section 654 did not apply to any of the charges. The People referred to Penal code section 166, subdivision (b)(2). The People argued that each contact with Sahagun was a conscious decision by defendant to violate the court order and instill fear in her. The trial court should find that 12 of the emails sent to Sahagun were violations of the restraining order. The stalking charge should be based on the Facebook posts and the other emails.[3]

The People also argued in their resentencing memorandum that the aggravating factors (eight of them) outweighed the one mitigating factor. He should be sentenced to the upper term on the stalking charge. In addition, the trial court should run all of the counts consecutive to each other. Defendant could be sentenced consecutively on full terms for all the restraining order violations. The People also argued that his entire sentence should be served in state prison.

The People chose not to retry any of the charges. Defendant was resentenced on September 24, 2021. Sahagun provided a statement at the resentencing hearing. She advised the trial court that the events that led to defendant being arrested were very difficult for her. She stated that even though she had a protective order, he created accounts on Facebook and was posting messages directly on social media

---

[3] The People clearly misstated that defendant sent Sahagun emails when the evidence showed that the stalking and all of the violations of the restraining order were based on Facebook posts.

several times each day. She wanted defendant to be sentenced to the upper term and that all misdemeanor counts be imposed consecutively. She continued to have extra security at her office because she was afraid of defendant. Sahagun was also seeking a 10-year restraining order. Defendant made a statement apologizing to Sahagun.

The prosecutor requested that defendant be given the upper term on the stalking charge. The prosecutor also stated, "And for all of the misdemeanors to run consecutive because they were all on separate days. They were separate emails that were sent directly to her, some of them very nasty. And that was after he had already put up a website that had a threatening cartoon . . . . And also then during those, he had made statements saying that he was going to come or somebody was going to come after her, and putting her, obviously, in fear for her life and her family's life."

Defendant's counsel requested that the trial court impose the middle term on the stalking charge and that it was defendant's position that "the restraining order violations are 654 to the stalking and the Court should stay any sentence." In the alternative, the trial court should run the restraining order convictions concurrent to the stalking charge.

The trial court stated, "The defendant was a lawyer. He knew the rules, professional responsibility. He knows the meaning of a court order, but he decided to ignore it every single time. Every single violation, he had an opportunity to turn to be a law-abiding citizen and to be an ethical lawyer. But every time there was a

8

violation, he just upped the ante once more. He upped the ante during the trial, harassing witnesses. The court of appeals have taken judicial notice of this." The trial court noted that defendant had used the law as a "sword to cause chaos in the county of Riverside."

Defendant was sentenced to the middle term of three years in state prison on count 51, the stalking charge. In addition, he was sentenced to eight months on count 43, the charge involving Janet, which was ordered to run consecutive to the sentence on count 51, for a total of three years eight months on the felony charges. The trial court additionally sentenced defendant to 180 days for each of counts 52 and 53. The trial court stated, "For Count 52, you know, the first violation of restraining order, ah, he made a mistake, you ought to know better, 180 days consecutive. [¶] Count 53, the second violation of the restraining order in a second day, maybe he had a bad day. Maybe he didn't remember that he violated the first time. 180 days consecutive." The trial court then stated, "Count 54, he was a lawyer, he knows . . . what a valid court order means. One year." He then sentenced defendant to one year each on counts 55 through 62, all ordered to run consecutive. The trial court ordered that all previous court-ordered fines were to remain imposed. The trial court granted Sahagun a stay-away order for a period of 10 years.

The trial court clarified on December 3, 2021, that there had been a sentencing error on the misdemeanor charges. Defendant had enough credits to cover his felony sentence of three years four months. The sentence on the

9

misdemeanors had not been served and there was an error in the imposition of the sentence. The trial court again stated that it was imposing consecutive sentences because defendant had been a lawyer and knew what the restraining orders meant. The trial court noted, "[H]e continuously, willfully violated each of these judge's orders, restraining orders without any hesitancy." The trial court imposed consecutive sentences of 180 days on each conviction for counts 52 through 63, to be served in county jail. When the credits were applied, defendant had 897 days remaining to be served in county jail.

## DISCUSSION

A. <u>PENAL CODE SECTION 654</u>

Defendant claims the trial court erred by imposing consecutive sentences on all of the restraining order violations (counts 52 through 63) and the stalking charge on count 51.

Section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."[4] "Section 654 bars

---

[4] Section 654 was amended effective January 1, 2022, to allow the trial court to impose sentence on any offense and not the one that carries the longest prison term. (Stats. 2021, c. 441, § 1.) Defendant filed his brief after the effective date of the current section 654 and does not argue that the amendment is applicable to his sentence imposed.

10

separate punishment for multiple offenses arising out of a single, indivisible course of action." (*People v. Neely* (2009) 176 Cal.App.4th 787, 800.)

"Whether a defendant may be subjected to multiple punishment[s] under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of conduct reflects a single " 'intent and objective' " or multiple intents and objectives." (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.)

" 'When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective.' " (*In re L.J.* (2021) 72 Cal.App.5th 37, 43.) "We review for substantial evidence a trial court's implied finding that a defendant had separate intents and objectives for different offenses." (*Id.* at p. 43.)

" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' [Citation.] However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an

11

inference drawn from evidence rather than a mere speculation as to probabilities without evidence.' [Citation.] ' " 'By definition, "substantial evidence" requires *evidence* and not mere speculation.' " ' " (*People v. Grant* (2020) 57 Cal.App.5th 323, 330.)

Defendant contends the trial court misunderstood its discretion under section 654. First, he claims the prosecutor improperly argued that Penal Code section 654 did not apply based on Penal Code section 166, subdivision (b)(2).[5] He insists, and we agree, that this section did not apply to defendant's convictions for violation of Penal Code section 166, subdivision (a). Defendant claims the record supports that the trial court relied on this section as it imposed one-year terms initially, which is only required under Penal Code section 166.

Second, the prosecutor erroneously argued to the trial court that all of the violations of the restraining order occurred on different days but the evidence supported that the violations all occurred on November 3, 2016, and November 5 through November 7, 2016. Defendant insists that it is "unclear" whether the trial court believed section 654 did not apply due to the prosecutor's reference to Penal

---

[5] Penal Code section 166, subdivision (b)(1) provides, "A person who is guilty of contempt of court under paragraph (4) of subdivision (a) by willfully contacting a victim by telephone or mail, social media, electronic communication, or electronic communication device, or directly, and *who has been previously convicted of a violation of Section 646.9* shall be punished by imprisonment in a county jail for not more than one year, by a fine of no more than five thousand dollars ($5,000), or by both that fine and imprisonment." Section (b)(2) provides, "For the purposes of sentencing under this subdivision, each contact shall constitute a separate violation of this subdivision." This section does not apply to defendant.

Code section 166 or whether the trial court erroneously relied on the prosecutor's argument that all 12 counts were based on "emails" sent on 12 separate days. Either ground constitutes an abuse of the trial court's discretion and remand for resentencing is required.

The record does not support that the trial court relied on Penal Code section 166 to find Penal Code section 654 did not apply. Defendant argued to the trial court that Penal Code section 654 applied to the restraining order violations and they all should be stayed, and that the stalking charge was the only properly imposed count. The trial court never mentioned Penal Code section 166 in its sentencing. While the trial court does not explicitly state the reasons on the record as to why section 654 did not apply, the trial court explicitly stated that defendant was aware each time he violated the restraining order. The trial court implicitly found that each crime had a separate objective and occurred on separate occasions. (*People v. Kelly* (2018) 28 Cal.App.5th 886, 905.) We must uphold the trial court's finding that the defendant's crimes involved separate intents and objectives if substantial evidence supports the determination. (*Kelly, supra,* at p. 905.) We so find, that the evidence supports that each restraining order violation involved a separate objective and intent to continue to increase the amount of fear in Sahagun.

Here, the trial court ruled that, "The defendant was a lawyer. He knew the rules, professional responsibility. He knows the meaning of a court order, but he decided to ignore it every single time. Every single violation, he had an opportunity to turn to be a law-abiding citizen and to be an ethical lawyer. But every time there

13

was a violation, he just upped the ante once more. He upped the ante during the trial, harassing witnesses." Penal Code section 654 does not apply when "the defendant had a chance to reflect between offenses and each offense created a new risk of harm. [Citations.] 'Separate sentencing is permitted for offenses that are divisible in time.' " (*People v. Felix* (2001) 92 Cal.App.4th 905, 915.) The trial court did not abuse its discretion by determining that each of the violations was a separate act and its ruling does not show that it relied on improper facts.

Even if we were to consider the trial court initially erroneously followed the prosecutor's argument by imposing one-year terms, at the later hearing on the matter, the trial court reiterated that defendant was aware of what he was doing each time he violated the restraining order. The trial court stated, "[H]e continuously, willfully violated each of these judge's orders, restraining orders without any hesitancy." The trial court also noted that defendant was a lawyer and should have known better than to violate the restraining order. The record does not support that the trial court improperly relied on Penal Code section 166 in determining that Penal Code section 654 did not bar multiple punishments in this case.

Moreover, the trial court never adopted the prosecutor's argument that each of the restraining order violations occurred on a different day. The trial court stated that defendant committed multiple violations and had time to reflect and become a "law-abiding citizen." Just prior to sentencing, the trial court heard from Sahagun who recounted the Facebook posts and the fear that she suffered. She kept the security measures at her office because of her fear of defendant. No evidence

14

supports that the trial court found that Penal Code section 654 did not apply because each of the restraining order violations occurred on separate days.

Defendant mentions in passing that the stalking conviction was based on two or more of the violations of the restraining order and could have been the same violations that constituted the 12 restraining order violation convictions. Defendant does not provide further argument to support that the jury, in convicting defendant, relied on the same acts despite there being over 50 posts on Sahagun's Facebook page. We find the trial court impliedly concluded that all of the violations of the restraining order and stalking conviction were based on separate acts.

B.  <u>MAXIMUM SENTENCE ON MISDEMEANORS</u>

Defendant contends the trial court erred by imposing the maximum sentence on each of the misdemeanor violations. Defendant insists that the trial court relied on mistaken facts that the restraining order violations all occurred on separate days in selecting the sentence and that the sentence imposed "exceeds the bounds of reason" for his conduct. The imposition of consecutive sentences was an abuse of the trial court's discretion.

Initially, we have already rejected that the trial court relied on the argument by the prosecutor that the violations all occurred on separate days. We need not further address the issue.

We also reject that the sentence imposed by the trial court "exceeds the bounds of reason for the offense committed." Defendant recognizes that there is no official guidelines for the imposition of misdemeanor sentences. However, he

15

insists that the trial court should consider general sentencing objectives including protecting society, punishing the defendant and other sentencing factors.

" 'The burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. [Citation.] Concomitantly, '[a] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977, superseded by statute on other grounds as stated in *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.)

The California Supreme Court has stated: "[T]he Legislature clearly indicated its intent that the aggregation provisions of Penal Code section 1170.1, which limit consecutive terms to one-third of the middle determinate term, apply only in imposing sentence for felonies." (*In re Eric J.* (1979) 25 Cal.3d 522, 537, superseded by statute on other grounds as stated in *In re Ernesto L.* (2022) 81 Cal.App.5th 31.) A trial court judge maintains discretion as to the length of a misdemeanor term. (*People v. Erdelen* (1996) 46 Cal.App.4th 86, 92.) The court in *In re Valenti* (1986) 178 Cal.App.3d 470, in addressing whether failing to apply Penal Code section 1170.1 to misdemeanor convictions violated equal protection, found that the misdemeanor sentences were properly ordered to be served

16

consecutively. It found, "Petitioner's demonstrated pattern of disdain for the laws of society is manifest from the record before this court. The state has a compelling interest to protect its law abiding citizens by discouraging the criminal element from repeatedly violating its laws. [Citations.] We conclude that the governmental objectives of section 1170.1 are inapplicable to this case." (*In re Valenti* (1986) 178 Cal.App.3d 470, 475–476.)

Here, the trial court did not exceed the bounds of reason by imposing consecutive sentences. The trial court had the discretion to impose consecutive sentences on the misdemeanor convictions. The trial court was especially concerned that defendant was a lawyer yet repeatedly violated a court order. Further, the posts by defendant threatened to take Sahagun's attorney's license and that she needed to pay defendant, an implied threat that there would be consequences if she did not pay. Further, defendant created fake accounts in order to conceal his identity showing criminal sophistication. The trial court did not abuse its discretion by imposing consecutive sentences on the misdemeanor convictions.

Defendant compares his sentence to that received by the defendant in *People v. McPheeters* (2013) 218 Cal.App.4th 124. In *McPheeters*, the defendant was convicted of stalking in violation of a restraining order and three counts of disobeying a court order. He was sentenced to a six-year term on the stalking (based on a prior conviction) and the trial court imposed three concurrent sentences

17

on the convictions for disobeying a court order.[6] (*Id.* at p. 127.) The facts showed that defendant had abused the victim for years. The defendant moved next door to the victim and repeatedly violated the restraining order by going to her house and threatening that someone was going to beat her up. He told the police he was going to shoot her. (*Id.* at pp. 128-129.)

Initially, as recognized by defendant, the fact that another defendant may receive a more lenient sentence does not show that the trial court abused its discretion. Moreover, in this case, defendant was an attorney who repeatedly violated a court order. In addition, he tried to conceal his identity in order to continue to harass Sahagun. The trial court did not abuse its discretion by imposing consecutive sentences on the misdemeanor convictions in this case.

C.    THE ASSESSMENTS IMPOSED MUST BE REDUCED

Defendant contends the assessments imposed are in excess of the statutorily authorized amounts. The abstract of judgment states that the assessments imposed pursuant to Penal Code section 1465.8 were $2,440, and $1,830 pursuant to Government Code section 70373. These assessments were the same amount as the amounts imposed at the original sentencing. Defendant contends the proper amount to be imposed based on his 14 convictions is $560 pursuant to Penal Code section 1465.8 and $420 pursuant to Government Code section 70373. The People concede the error and agree with the new calculation of assessments proffered by defendant.

---

[6] The three disobeying a court order counts were stayed on appeal pursuant to Penal Code section 654 but the reasons do not appear in the published opinion.

18

As stated, the original assessments were in the amount of $1,830, which was $30 for each conviction, pursuant to Government Code section 70373. Pursuant to Penal Code section 1465.8, subdivision (a)(1), the total amount assessed was $2,440, which was $40 for each conviction. This was prior to the reversal by this court of several of his convictions. However, the trial court chose to impose the same assessments upon resentencing.

Penal Code section 1465.8, subdivision (a)(1) provides, "To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code." Government Code section 70373, subdivision (a)(1) provides, "To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses as defined in subdivision (i) of Section 1463 of the Penal Code, involving a violation of a section of the Vehicle Code or any local ordinance adopted pursuant to the Vehicle Code. The assessment shall be imposed in the amount of thirty dollars ($30) for each misdemeanor or felony and in the amount of thirty-five dollars ($35) for each infraction."

Here, the assessments imposed constitute an unauthorized sentence and can be corrected for the first time on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [an unauthorized sentence may be corrected at any time.]; see also *People v. King*

(2022) 77 Cal.App.5th 629, 635 ["under the unauthorized sentence rule, a party does not forfeit the right to argue that a sentence is unlawful by failing to object in the trial court"].)

We will order the trial court to modify its order on the assessments to reflect that the Penal Code section 1465.8 assessment should be reduced to $560 and the Government Code section 70373 assessment should be reduced to $420.

### D.    RESTITUTION

Defendant contends the trial court erred by reimposing the same restitution order as was imposed at the original sentencing. He insists that restitution could be awarded only to Sahagun and Janet, and the remaining restitution should be stricken. Further, Sahagun's restitution order should be reduced to $2,386 as the attorney's fees were only incurred for count 45, which was reversed. Moreover, remand is appropriate to determine the amount of restitution that should be awarded to Janet based on the reversal of two counts involving her salon.

#### 1.    *ADDITIONAL FACTUAL BACKGROUND*

At the original sentencing hearing the People filed a chart showing the expenses incurred by each victim. The chart set forth the amount requested for each victim and the detailed attorney's fees. The People originally requested total restitution for all victims in the amount of $192,615.58. At sentencing, the trial court awarded $192,615.58, adopting the amounts set forth in the chart provided by the People. This amount included $28,104.97 to Sahagun and $13,725.95 to Janet.

In the Opinion, we stated, "Initially, since we have reversed counts 1 through 42, and count 44, Arias is no longer responsible for restitution, and the pro bono legal fees for those counts will no longer be required to be paid by Morales. In addition, since we have reversed the convictions in counts 45 through 50 for the extortion counts involving Luis [Z.], Alejandro [C.] and [Bryan] Owens, there is no restitution that needs to be paid for those counts. Further, with such reversal, we will vacate the sentence imposed and remand to the trial court for resentencing of Morales. However, we will consider the claim raised by Morales that Sahagun could not be awarded restitution for security upgrades for the stalking count as these issues will need to be resolved upon remand for resentencing." We concluded that the order for restitution for Sahagun's upgrades to her security system were properly included.

At the resentencing, the trial court stated "I've already made a decision as to restitution to the victim. And I recall the court of appeals confirmed, affirmed the restitution to the victim in this case. So, whatever the amount is, that's already been affirmed. The Court doesn't have to set restitution because it was affirmed by the court of appeals." Defendant did not object. The abstract of judgment referred to the original minute order, which imposed $195,615.58.

### 2.    *PROPER RESTITUTION*

We generally review an order of victim restitution for an abuse of discretion. (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) It was the intent of the Legislature in enacting Penal Code section 1202.4, "that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a

21

defendant convicted of that crime." (Pen. Code, § 1202.4, subd. (a)(1).) Penal Code section 1202.4, subdivision (f)(3), provides that restitution should be awarded in a dollar amount "that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct." This includes attorney's fees. (Pen. Code, § 1202.4, subd. (f)(3)(H).)

Initially, we reversed the restitution award for all victims save the counts against Sahagun (counts 51 through 63) and Janet (count 43).[7] This court already reversed these restitution awards in our previous Opinion. The adoption of the originally imposed restitution award by the trial court was unauthorized as it included dismissed charges. We will order the restitution awarded for those counts other than counts 43 and counts 51 through 63 be stricken.

Second, defendant contends, and the People concede, that Sahagun's restitution award must be reduced from $28,104.98 to $2,386. The original restitution award to Sahagun was $25,718.97, which consisted of $2,386 for installing an alarm system that was assessed for count 51. This court affirmed the imposition of this amount for installing the security system. The remainder of the award was attorney's fees assessed on count 45. Since count 45 was reversed by this court, Sahagun was not entitled to restitution for this count and imposition of such restitution was unauthorized. We will order the trial court to modify its order of restitution to Sahagun to $2,386.

---

[7] Defendant concedes—although he argues they should be reduced—that the restitution orders for Sahagun and Mahram could be imposed by the trial court. The People concede that the restitution awards to persons other than Sahagun and Mahram should be stricken as unauthorized.

Finally, defendant contends remand is necessary for the trial court to exercise its discretion in awarding restitution to Janet. He insists that the $13,725.95 awarded for the legal fees incurred for convictions in counts 42, 43 and 44 is improper as only count 43 remains. Defendant insists he is entitled to a hearing to determine if the economic loss claimed by Janet was due to the criminal conduct in count 43. The People claim that defendant has waived this claim because he failed to object to the restitution amount imposed by the trial court and it was within the trial court's discretion to impose this amount.

Defendant does not contend that this amount was "unauthorized." Rather, defendant contends that since two of the counts against Janet were reversed, the trial court must exercise its discretion as to whether the remaining count caused the economic loss. We agree with the People that defendant has waived any claim that the restitution awarded to Janet was improper. "A defendant wishing to argue on appeal that there is no factual basis for a restitution order must object on that ground in the trial court to preserve the issue for appeal." (*People v. Mays* (2017) 15 Cal.App.5th 1232, 1237; see also *People v. Brasure* (2008) 42 Cal.4th 1037, 1075, ["[B]y his failure to object, defendant forfeited any claim that the order was merely unwarranted by the evidence, as distinct from being unauthorized by statute"].).)

Here, defendant remains convicted of count 43 against Janet. While the initial restitution order was for three counts, the trial court could still impose restitution to Janet for the remaining count. Such restitution was not unauthorized. In fact, the trial court could reasonably conclude that the same amount of attorney's

23

fees would be incurred defending just one count. As such, defendant's failure to object to the award of restitution to Janet results in his forfeiture of the claim on appeal. We uphold the restitution award to Janet.

## DISPOSITION

We direct the trial court to modify defendant's sentence by (1) reducing the assessment pursuant to Penal Code section 1465.8 to $560; (2) reduce the assessment imposed pursuant to Government Code section 70373 to $420; and (3) modify the restitution order award to Sahagun to the amount of $2,386 on count 51. The remaining restitution fines (except for the award to Janet on count 43) shall be stricken. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.